# IN THE COURT OF APPEALS OF IOWA

No. 16-1691
Filed December 21, 2016

**IN THE INTEREST OF T.J.,**
**Minor child,**

**W.Z., Father,**
     Appellant.

_____

     Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.

     Father appeals from an order terminating his parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (f) (2015). **AFFIRMED.**

     Cole J. Mayer of Masterson & Bottenberg, LLP, Waukee, for appellant father.

     Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant Attorney General, for appellee State.

     Congarry D. Williams of Juvenile Public Defender Office, Des Moines guardian ad litem for minor child.

     Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

William appeals from an order terminating his parental rights in his child pursuant to Iowa Code section 232.116(1)(b), (e), and (f) (2015). The elements of the State's case and the standard of review applied to the juvenile court's order are both well-established and need not be repeated herein. *See In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step analysis"); *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014) (same); *In re M.S.*, No. 16-0975, 2016 WL 6269904, at *2 (Iowa Ct. App. Oct. 26, 2016) (setting forth the elements of the State's case and the burden of production and persuasion).

We first address whether the State has proved by clear and convincing evidence the statutory grounds authorizing the termination of William's parental rights. *See M.W.*, 876 N.W.2d at 219–20; *M.S.*, 2016 WL 6269904, at *2. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We turn our attention to section 232.116(1)(e). As relevant here, the State was required to prove the father had "not maintained significant and meaningful contact with the child during the previous six consecutive months." Iowa Code § 232.116(1)(e)(3). "Significant and meaningful contact":

> [I]ncludes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that

the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(e)(3).

We conclude the State proved by clear and convincing evidence this statutory ground authorizing the termination of William's parental rights. T.J., the child at issue, was born in 2004. The father had one contact with the child in 2009, when she was about five years old. The father was otherwise wholly absent from her life until the initiation of child-in-need-of-assistance proceedings in 2014. At that time, the child and her maternal half-siblings were removed from the care of the mother and placed with their maternal grandfather. The father commenced visitation with the child upon the commencement of the assistance proceedings. In March 2015, the child and her half-siblings were placed with the father and his wife after it was reported the grandfather had sexually abused T.J. The placement proved short-lived. The children were removed from the father's care and ultimately placed in foster care after the father was arrested for assaulting his wife and his wife's adult daughter. T.J. was present during the assault, in which, it was alleged, the father head-butted his wife and slapped his wife and her adult daughter across the face. The father remained in jail until approximately September 2015, when he pleaded guilty to domestic abuse assault, second offense. Upon his release, the father failed to remain in regular contact with the department of human services and failed to comply with the case plan. The father did not exercise any visitation with the child between the day of his arrest—in August 2015—and the day the juvenile court terminated his parental rights—in September 2016. It was thus undisputed the father had not

had contact with the child for more than six months prior to the termination of his parental rights and had not assumed the responsibilities of parenting the child, including the expression of interest in the child. *See* Iowa Code § 232.116(1)(e)(3); *In re L.A.*, No. 14-1312, 2014 WL 5478227, at *2 (Iowa Ct. App. Oct. 29, 2014) (affirming termination where the mother had minimal contact with the child and failed to remain in contact with the department of human services).

William claims responsibility for his lack of visitation with T.J. from the time of his release from jail until the time of the termination hearing lies with the department of human services. Specifically, William contends the department failed to make reasonable efforts to contact him and facilitate visitation with the child. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(7) (providing department of human services must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. The nature of the reasonable-efforts mandate is determined by the circumstances of each case. *See id.* (discussing scope of mandate). However, "[r]easonable efforts often include visitation." *In re D.M.*, No. 15-0228, 2015 WL 4160395, at *3 (Iowa Ct. App. July 9, 2015).

We conclude William's challenge to the reasonable-efforts requirement fails. First, William failed to preserve error on the issue. After the time of his release from jail, William failed to request the resumption of visitation with the child despite numerous opportunities to do so. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (stating a parent must make such a challenge "at the removal, when the case permanency plan is entered, or at later review hearings" and voicing complaints to a social worker is not sufficient to preserve error); *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error). Second, this is not a case in which the State failed to make reasonable efforts to facilitate placement of the child with the father. The record reflects the department of human services extended numerous services to the family, including substance abuse treatment and therapy services. The father knew how to contact the department and his case worker when he wanted to do so; he frequently did so at the outset of the case. After being released from jail, the father simply failed to avail himself of any further services to try and reunite with his daughter. The State satisfied the reasonable efforts requirement. *See, e.g., In re B.G.*, No. 15-0732, 2015 WL 5996936, at *4 (Iowa Ct. App. Oct. 14, 2015) (holding the State established reasonable efforts where services were provided but the mother did not avail herself of the services); *In re B.B.*, No. 12-0807, 2012 WL 2408714, at *3 (Iowa Ct. App. June 27, 2012) ("Considering the number and variety of services offered or provided, the delays in or failure of services attributable to the mother, the age of the child, and the length of time the

child has been removed from the mother's care, we find the State made reasonable efforts to reunite the mother with her daughter.").

For his next claim of error William contends the State failed to establish termination of his parental rights was in the best interest of the child. We disagree. "The legislature has categorically determined 'the needs of a child are promoted by termination of parental rights' if the grounds for termination of parental rights exist." *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992) (citation omitted). However, there is no all-encompassing best-interest standard that can resolve any particular case. The court must look at the particular facts and circumstances of each case. *See* Iowa Code § 232.116(2) (identifying relevant considerations); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (stating the court must look to immediate and long-term interests). Here, the father was absent for the first ten years of this child's life. The record reflects he has unaddressed mental-health conditions, including bipolar disorder and schizophrenia. His housing and employment situations were unstable. He has a long history of violent criminal conduct. He assaulted his wife and her daughter in front of the child. Finally, we note the father has eleven children from different mothers. None of the eleven children reside with the father. He has little, if any, relationship with any of therm. It is self-evident the father lacks the capacity and desire to parent any of his children, including the child at issue in this case.

William next contends the juvenile court should not have terminated his parental rights due to the closeness of the parent-child bond. Section 232.116(3)(c) provides the court may avoid termination if "there is clear and convincing evidence that the termination would be detrimental to the child at the

time due to the closeness of the parent-child relationship." Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to provide for the children's developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010); *see also* Iowa Code § 232.116(2) (setting forth the factors in determining the child's best interests). There is no evidence of any bond between William and T.J. He saw her on one occasion during the first ten years of her life. After commencing visitation with and care of the child, the father quickly absented himself from her life again upon being incarcerated for beating his wife and her adult daughter in front of the child. After being released from jail, William made no effort to resume visitation with the child or even contact the child. The child is now thriving in the care of her foster family. She has no desire to reunite with the father. Under the circumstances, we decline to preserve the parent-child relationship.

Finally, William contends the juvenile court erred in finding the child could not be returned to his care if granted an additional six months' time. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We conclude the district court did not err in denying the father's request for more time. Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14-0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sept. 17, 2014) ("What's past is prologue."); *see also A.B.*, 815

N.W.2d at 778 (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding we must look to a parent's past behavior as indicative of the quality of care the parent is capable of providing in the future). As noted above, the father has a demonstrated history of not being involved in this child's life or his other children's lives. He has unaddressed mental-health and substance-abuse conditions. He has extensive, violent criminal history. These conditions and this conduct have existed for decades. The father refused to avail himself of services provided in this case to address these issues. For example, the father did not complete a dual diagnosis program. He refused to attend substance abuse classes. There is no reason to believe these issues would be addressed if the father were given an additional six months' time.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778.

**AFFIRMED.**